UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MONTEZ KENNEDY,

      Petitioner,

v.                                                                Case No. 2:07-cv-157
                                                                HON. GORDON J. QUIST

DAVID BERGH,

      Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner filed this petition for writ of habeas corpus challenging the validity of the Baraga County Circuit Court's decision denying petitioner's motion for suspension of fees and costs in his action for judicial review of a misconduct finding for threatening behavior. The court imposed a partial filing fee which petitioner claims was improper under state law. Petitioner challenges the validity of his misconduct conviction in this petition. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner claims that:

I. Petitioner was prejudicially denied full written notice of the circumstances surrounding the charge within 24 hours of the hearing in violation of the due process clause of the Fourteenth Amendment.

II. Petitioner was prejudicially denied the ability to obtain exculpatory evidence to effectively defend against the charge in violation of the due process clause of the Fourteenth Amendment.

III. The hearing administrator violated petitioner's liberty interest in a meaningful review of the hearing decision in violation of the due process clause of the Fourteenth Amendment.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case

differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner's motion for reconsideration of the order requiring a partial filing fee was denied by the circuit court on May 1, 2006. Petitioner sought to appeal this issue to the Michigan

Court of Appeals. The Michigan Court of Appeals denied petitioner's motion to waive fees on July 12, 2006. Petitioner's motion for reconsideration of that order was denied. Petitioner never appealed to the Michigan Supreme Court. To the extent that petitioner is claiming that the Michigan courts misapplied state law, petitioner's claims must be dismissed. A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988). Therefore, it appears that this portion of petitioner's argument should be dismissed.

As a result of petitioner's misconduct conviction, he received 30 days of detention and loss of privileges. There is no indication that the conviction could have any direct effect on the duration of petitioner's confinement in prison. Further, petitioner is not entitled to habeas relief because his misconduct hearing did not violate the constitution. Under Michigan law, a prisoner is entitled to notice of a hearing, and the opportunity to present evidence and arguments. M.C.L. § 791.252. A hearing officer is not bound by state or federal evidentiary rules, but rather may consider "evidence of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs." *Id.* Further, a hearing officer may deny a prisoner access to evidence that may pose a security concern if disclosed. *Id.* Petitioner has failed to show that his constitutional rights were violated at his misconduct hearing.

Moreover, the hearing officer's conclusion that petitioner was guilty of the misconduct charge was supported by the record.

> I began the hearing by viewing the video tape. The video was summarized for prisoner at the hearing. The video shows prisoner exiting the chow hall, walking through the commons area, ascending steps, walking on the wing toward his cell. The reporter is seen with prisoner and prisoner appears to be talking to the reporter, as he faces

the reporter. Shortly after prisoner and reporter ascend the stairs, Officer Eastman takes the stairs two at a time. Two other staff members are seen at the opposite end of the wing. Then all staff members, reporter, Officer Eastman, and the two other staff members, escort prisoner to his cell. Prisoner is not seen at all times, so it cannot be determined if he points or clenches his fist. The video was marked as confidential for security purposes and considered as part of the evidence. Prisoner was not shown the video for security purposes. A portion of the video statement was also marked as confidential for security purposes.

ORAL STATEMENT FROM PRISONER AT HEARING: Eastman had to be far behind; he would have been a lot closer to hear that; he didn't like it because I submitted a medical kite on him; he followed me; I told him to leave me alone; he said he was only messing with me to push my buttons to see how far I could go; we don't like each other; I said leave me alone.

I told prisoner the finding and sanction prior to his leaving the hearing room.

REASON FOR FINDING: Prisoner admits to telling the reporter to leave him alone, but prisoner denies the allegations of the Misconduct Report. Prisoner says the video will show that he did not point, nor did he clench his fists. However, the video does not show prisoner at all times as he returns to his cell. What is key about the video is Officer Eastman, who watches prisoner and reporter ascend the stairs and shortly thereafter take two steps at a time up the stairs. Then the video shows all four staff members (the reporter, two staff members who had been previously at the opposite side of the wing, and Officer Eastman) escorting prisoner to his cell. The video is consistent with the Misconduct Report and staff statements indicating that prisoner said to the reporter in a loud voice, "Let's go and take care of this. I'll finish it right now. I'll kick your ass right now and it will be over." Had prisoner not said the reported words, it is unlikely that Officer Eastman would have followed so quickly and unlikely that other officers would assist in escorting prisoner to his cell. That the video does not show prisoner pointing or clenching his fists as described in the Misconduct Report does not mean that it did not happen, as prisoner is not seen at all times on the video. Prisoner's words expressed an intent to injure or physically abuse another person.

It is clear that petitioner received due process of law, and that he cannot support any claim that his constitutional rights were violated during the misconduct hearing. Prison inmates subject to serious disciplinary action are entitled to (1) 24 hours advance written notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to institutional safety; and (3) a written statement by the factfinders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). If the prisoner received these procedural protections, and if there were "some facts" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Superintendent of Massachusetts Institute, Walpole v. Hill*, 472 U.S. 445 (1985). Petitioner received these protections. Petitioner has failed to show that his constitutional rights were denied.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated: December 22, 2009